**Harold FISHER, Plaintiff,**

v.

**HARRIS, UPHAM & CO., INCORPORATED, Defendant.**

**No. 69 Civ. 3312–WK.**

United States District Court,
S. D. New York.

Nov. 28, 1973.

**448**

Livingston, Livingston & Harris, and Kaplan, Kilsheimer & Foley, New York City, for plaintiff; I. Alan Harris and Dermot G. Foley, New York City, of counsel.

Gifford, Woody, Carter & Hays, New York City, for defendant; Charles L. Trowbridge, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff, Harold Fisher, moves to confirm and modify the report of Special Master John J. Galgay,[1] appointed by the court pursuant to Rule 53(a),

Fed.R.Civ.P.,[2] to supervise discovery proceedings in this action brought under § 10(b) of the Securities Act of 1934. The modification sought by plaintiff would impose sanctions of $15,000 on defendant, strike defendant's answer and grant judgment to plaintiff. Defendant cross-moves, seeking vacation of the Special Master's report, a protective order terminating discovery and personal assessment of costs on plaintiff's attorney, I. Alan Harris. We confirm the Special Master's report in full.

The Special Master was appointed, upon consent of the parties, on February 18, 1972 due to the parties' inability to conduct discovery proceedings by themselves, as contemplated by the Federal Rules of Civil Procedure, without constant disagreement, interruption, delay and consequent court intervention. The court granted the Special Master broad powers under Rule 53(c), Fed.R.Civ.P.,[3] subject to review by this court upon application of any party, to supervise discovery, including power to rule on all

---

[1.] Since filing his report, Mr. Galgay has been duly appointed a Referee in bankruptcy for this district and has assumed that office.

[2.] Rule 53(a) provides:

"(a) Appointment and Compensation. Each district court with the concurrence of a majority of all the judges thereof may appoint one or more standing masters for its district, and the court in which any action is pending may appoint a special master therein. As used in these rules, the word 'master' includes a referee, an auditor, an examiner, a commissioner, and an assessor. The compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct. The master shall not retain his report as security for his compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party."

[3.] Rule 53(c) provides:

"(c) Powers. The order of reference to the master may specify or limit his powers

and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. He may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may himself examine them and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in Rule 43(c) for a court sitting without a jury."

motions relating to discovery; rule on objections at depositions or interrogatories; direct parties or witnesses to answer unobjectionable questions; order the production of documents and records; and "take all measures necessary or proper for the efficient performance of his duties." [4]

■ The court is aware of the teaching of Rule 53(b) [5] and LaBuy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), which require a showing of exceptional circumstances before a Special Master may be appointed. Here, however, the parties consented to such an appointment and exceptional circumstances were present as well.

■ The conduct of the parties prior to the Special Master's appointment demonstrated that they were unable to proceed with discovery without impartial supervision. In earlier discovery proceedings, Magistrate Jacobs had found it necessary to recommend imposing a sanction of $250 on defendant for its failure to make proper answers to interrogatories.[6] Judge Frankel agreed and imposed the sanction.

The depositions predating the Master's supervision are filled with irksome quibbling, needless interruptions, frivolous objections and baseless directions not to answer by counsel for both parties. Extensive colloquies and arguments among counsel caused substantial delays in the testimony. The spirit of cooperation mandated by the federal rules was sorely lacking. Discovery, thus frustrated, the parties once again found it necessary to apply to the court for relief, and following argument and consultation with counsel, all agreed that the best course would be for the court to appoint a Special Master with full power to preside over all further discovery proceedings.

Numerous cases approve the appointment of a Special Master to supervise discovery proceedings where the issues are complicated or the parties recalcitrant. First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas & Elec. Co., 245 F.2d 613 (8th Cir.), cert. denied, 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957), cited in Bourgeois v. El Paso Natural Gas Co., 257 F.2d 807 (2d Cir. 1958); Shapiro v. Freeman, 38 F.R.D. 308 (S. D.N.Y.1965); Hirsch v. Glidden Co., 79 F.Supp. 729 (S.D.N.Y.1948); United Artists v. Grinieff, 17 Fed.Rules Serv. 30b. 42, Case 1 (S.D.N.Y., July 3, 1952); cf. Olson Transp. Co. v. Socony-Vacuum Oil Co., 7 F.R.D. 134 (E.D.Wis.1944); Stentor Elec. Mfg. Co. v. Klaxon Co., 28 F.Supp. 665 (D.Del.1939).[7]

Throughout the Special Master's tenure, plaintiff asserted that defendant had failed to comply fully with an order for production of documents which had earlier been granted by Judge Gurfein.[8] This failure, plaintiff claimed, was part of a deliberate plan to frustrate discovery. Defendant's production of docu-

---

4. See attached Appendix.

5. Rule 53(b) provides:

"(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it."

6. Magistrate Jacob found defendant's answers were made in an "over-technical and disingenuous manner . . . and inexcusable . . . and precludes finding that the de-

fendant's opposition was substantially justified."

7. The treatises and articles are in accord: See 5A J. Moore, Federal Practice ¶ 53.12 [1] at 2999–3000 (2d ed. 1971); 9 C.A. Wright and A. R. Miller, Federal Practice and Procedure § 2605, n. 55 at 790 (1971); Seminar on Protracted Cases, X. The Use of Masters, 23 F.R.D. 319, 563 (1958); Kaufman, Use of Masters to Preside at the Taking of Depositions, 22 F.R.D. 465 (1958).

8. Plaintiff filed a motion to produce documents on September 9, 1971, which was consented to and so ordered by the Honorable Murray I. Gurfein, District Judge for the Southern District of New York.

ments under Judge Gurfein's order was strung out piecemeal during the depositions supervised by the Special Master. This compelled the Special Master to question defense counsel as to the thoroughness of the document search which had purportedly been conducted by defendant in response to the command of the court. Defense counsel excused his failure to produce all of the documents at one time by shifting the blame to an unskilled search staff and asserting that the records had been searched three times.

On March 28, 1972, defendant discovered the Computerized Wire Service Unit ("CWS Unit"), a print-out of all telex messages passing between Harris-Upham's headquarters and its seventy-two branch offices. When the existence of the CWS Unit was disclosed to the Special Master, he ordered it searched for twenty dates to be supplied by plaintiff. After plaintiff refused to supply the dates, the Special Master, on February 23, 1973, selected fifty-seven dates and ordered defendant to search the CWS Unit for messages relating to Bartep stock. One hundred and thirty telex messages were produced as a result of the search, only twenty-three of which the Special Master found had previously been produced.

Special Master Galgay concluded:

"I am convinced that the defendant violated the letter as well as the spirit of the Federal Rules of Civil Procedure governing discovery. Magistrate Jacobs and Judge Frankel thought similarly when the sanction of $250 was imposed against the defendant. The manner of piecemeal production made by defendant's counsel during the course of depositions and hearings persuade me that their original search was not as diligent as that required by the Rules. The defendant's discovery of the Computerized Wire Service

Unit on March 28, 1972, over four years after the filing of the complaint and approximately two years after the filing of the rule 34 motion cast real doubt on the adequacy of its search." [9]

The court is bound to "accept the master's findings of fact unless clearly erroneous." Rule 53(e)(2), Fed.R.Civ. P.; Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L. Ed. 1515 (1946); National Labor Relations Bd. v. Remington Rand, Inc., 130 F.2d 919 (2d Cir. 1942); Helene Curtis Industries v. Sales Affiliates, 121 F. Supp. 490 (S.D.N.Y.1954), aff'd, 233 F. 2d 148 (2d Cir.), cert. denied, 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956).

■ Defendant apparently bases its objections to the Special Master's findings on its analysis of the documents produced pursuant to the Special Master's order of February 23, 1973. Defendant contends that seventy-five of the documents produced were marked for identification during depositions of the defendant and that of the remaining documents thirty do not concern the issues in this case and twenty-nine "are the subject of extensive testimony in the voluminous depositions already taken." [10] Defendant seems to concede that the latter twenty-nine messages are covered by the Rule 34 order and are material to the issues in this litigation but claims that "there is no new information in the 29 messages." [11] Defendant misses the point. Even if we accept defendant's characterization of the documents, the fact remains that the CWS Unit contains some documents included within the scope of the Rule 34 order which defendant has failed to produce for nearly two years. Whether the information contained in those documents is "new" or not, defendant was and is obligated to produce them.

Defendant also fails to demonstrate any error in the Special Master's find-

---

9. Special Master's Final Report and Recommendations at 6.

10. Affidavit of Charles Trowbridge at 6.

11. Affidavit of Michael J. McAllister at 3.

ing that its original document search was not as diligent as Rule 34 requires. Nor can defendant provide any explanation for its extended failure to discover the existence of the CWS Unit. The court's review of the depositions in this case reveals repeated certifications by defendant that production of documents under the Rule 34 order was complete, inevitably followed by further piecemeal production of documents.[12] We can only conclude that defendant, intentionally or unintentionally, failed to conduct the thorough search required by Rule 34. The court agrees with the Special Master that defendant has violated the requirements of the Federal Rules by its continuing failure to produce all the documents covered by Judge Gurfein's order to produce and therefore adopts his findings.

We now turn to a consideration of the Special Master's recommendations.

The Special Master recommended that sanctions of $5,000 be imposed against the defendant, that defendant be ordered to search the CWS Unit for the entire period of the Rule 34 order, and that the losing party in the litigation be assessed the cost and counsel fees incurred in the taking of depositions of defendant's officials in Miami, Florida. The Special Master thought, however, that striking defendant's answer would be too drastic a remedy to impose for its derelictions. The court adopts the Special Master's recommendations.

We turn first to the sanctions recommended against defendant due to its derelictions. Plaintiff urges the court to strike defendant's answer and grant judgment to plaintiff. We agree with the Special Master that this is too severe a penalty to exact at this time. However, the court does feel that substantial sanctions are appropriate here, since defendant has clearly violated the Rule 34 order, frustrated discovery and failed to exercise the good faith and cooperation demanded by the discovery provisions of the Federal Rules. Litigants must learn that discovery is no longer to be considered a tactical game replete with deceit, obstruction and bad faith. "Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized principles, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451 (1947). Defendant's obstructive conduct has been inexcusable and will not be tolerated.

Defendant attacks the Special Master's partial reliance on the sanctions imposed on defendant by Judge Frankel, claiming that these prior sanctions occurred before his tenure and are irrelevant to the issue now before the court. We disagree.

Defendant's prior obstructive behavior is patently relevant to the nature and degree of sanctions now to be imposed as evidence of a continuing history of recalcitrance. Even without considering the prior sanctions, however, we believe a sanction of $5,000 is appropriate. Failures to comply with discovery orders are genuine threats to the sound, fair and efficient administration of justice. Such failures should and will be dealt with severely.

In accepting the monetary amount of the sanctions recommended by the Special Master, the court rejects plaintiff's motion that the amount be increased to $15,000. We note in passing that plaintiff's failure to cooperate with the Special Master and comply with his direction to supply the relevant dates for defendant's search of the CWS Unit is also inexcusable.

It appears, however, that there are still documents within the CWS Unit

---

12. *E. g.*, McCarthy deposition at 85–86; Smythe deposition at 7–8, 12; Long deposition at 4–5; Otten deposition at 137.

which have not been produced in compliance with Judge Gurfein's order. We therefore direct defendant to conduct a thorough search of this source for all dates covered by Judge Gurfein's order, *i. e.*, from October 1, 1968 to and including August 31, 1969.

Defendant is also directed to certify in writing that all documents included within Judge Gurfein's order have been produced except for those still in the CWS Unit.

Defendant's motion for a protective order declaring discovery completed is denied, as is its motion to assess plaintiff's attorney, I. Alan Harris, costs of $20,000. Any excess costs incurred by defendant are due to its obstructive conduct in failing to comply with Judge Gurfein's order.

The losing party in this litigation will be assessed the costs and counsel fees necessitated by the taking of depositions in Miami, Florida.

Finally, the court approves compensation in the sum of $3,412.50 for the Special Master. Plaintiff's refusal to stipulate to that amount is incomprehensible. The Special Master's detailed description of his services [13] demonstrates not only the time and effort expended by him but also the high quality of his service to the court. We commend his patience and judgment in handling this assignment and that unpleasant task. We approve the modest compensation requested and direct that it be paid by the parties in equal amounts within twenty (20) days from the entry of this order.

Plaintiff's motion to confirm the Special Master's report is granted in part but denied insofar as it seeks to modify that report or seeks additional relief. Defendant's motion to vacate and strike the report, for a protective order and for an order assessing costs is denied. Compensation in the amount of $3,412.-50 for the Special Master is approved.

Since the appointment of the Special Master, this case has been assigned to Judge Knapp for all purposes under the Individual Assignment System. As noted earlier, Special Master Galgay is no longer able to serve in that capacity due to his appointment as a Referee in bankruptcy of this court. Accordingly, his appointment as Special Master is terminated *nunc pro tunc* as of the date of his report (June 25, 1973), and future discovery, as well as all other proceedings in this action, will be conducted in whatever manner Judge Knapp directs.

So ordered.

## APPENDIX

### ORDER APPOINTING SPECIAL MASTER

Upon consent of the parties following discussion with the Court,

It is ordered that:

(1) John J. Galgay, Esq., 445 Park Avenue, New York, N.Y. 10022 (421–8800), be, and he hereby is, appointed Special Master in the above-entitled action, to superintend all pending and further discovery proceedings in this action, with power in the first instance:

(a) To rule on all pending and future motions relating to discovery, whether by deposition, interrogatories, or the production, inspection, copying, photographing, etc. of documents;

(b) To designate the time and place of all pending and future depositions, whether upon oral deposition or written interrogatories;

(c) To preside at and to rule upon all objections to, and the propriety of, any questions propounded to any party or witness during any deposition;

(d) To rule upon any written interrogatory and all objections to any questions so propounded;

13. Exhibit B to Special Master's Final Report and Recommendations.

(e) To direct any party or witness to answer any questions which the Special Master finds unobjectionable;

(f) To order, upon a showing of good cause and subject to the provisions of Rule 30(b), the production, inspection and copying of any designated documents and records not privileged which constitute or contain evidence relating to any of the matters within the scope of the discovery permitted by Rule 26(b) and which are in the possession, custody or control of a party;

(g) To rule, pursuant to the provisions of Rule 30(b), on whether documents and records produced are privileged;

(h) To regulate, pursuant to Rule 53(c), all proceedings in every hearing before him, and to do all acts and take all measures necessary or proper for the efficient performance of his duties as set forth above.

(2) Any action or ruling made by the Special Master shall be subject to review by this Court upon written application of any party, at the completion of the taking of the deposition of each witness or the completion of discovery and inspection, as the case may be. Such application shall be directed to the undersigned as Judge, and control of this cause is retained by the undersigned for the purpose of ruling on such applications.

(3) Interim compensation to be allowed the Special Master for his services shall be fixed by the Court, either upon the written stipulation of the parties and the Special Master or upon motion of the Special Master, at the conclusion of any one or more of the depositions, discovery and inspection of documents, or motions with respect to discovery, and the final compensation to be allowed the Special Master for his services shall be fixed by the Court in the same manner after the Special Master has fully rendered the services called for above.

(4) The interim allowances of compensation to the Special Master, and the cost of a copy of the transcript of each future examination for the Special Master shall be paid promptly by the parties, as follows: the plaintiff shall pay fifty (50%) per cent, and the defendant shall pay fifty (50%) per cent.

(5) Upon the final disposition of this action, the full amount paid as compensation and expenses of the Special Master shall be taxed as costs against the unsuccessful party.

(6) The time for all parties to place this suit on a trial calendar is extended to ten (10) days after the submission of the Special Master's final report certifying that all discovery proceedings have been completed.