**Catherine E. FAUTEK, Evelyn Levy, Truscha Quatrone, and Deborah Thornton, Plaintiffs,**

v.

**MONTGOMERY WARD & COMPANY, INC., Defendant.**

No. 78 C 1189.

United States District Court, N.D. Illinois, E.D.

Sept. 24, 1982.

Kenneth Flaxman, Thomas R. Meites, Susan M. Vance, Mandel, Lipton & Stevenson, Chicago, Ill., for plaintiffs.

Lawrence I. Kipperman, Mark C. Curran, James S. Whitehead, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This class action, brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to 2000e–17 (1976), involves allegations that defendant Montgomery Ward, Inc. has discriminated against female employees in its merchandising division, denying them training, pay, and promotions available to similarly situated male employees. On March 26, 1979, Judge Decker of this court certified the case as a class action under Fed.R.Civ.P. 23(b)(2) on behalf of female salaried employees of defendant's Chicago merchandising group and female hourly employees seeking advancement to salaried positions.

Plaintiffs have filed a motion for discovery sanctions under Fed.R.Civ.P. 37(d). Because the motion turns on the specific facts at issue, we will recite them in some detail.

In October, 1979, pursuant to Fed.R.Civ.P. 34, plaintiffs requested that defendant produce all personnel records of class members and similarly situated male employees relevant to this action. Plaintiffs also requested that this material be made available in computer readable form, if possible. Defendant responded that only minimal personnel information was in computer readable form, none of it responsive to the request to produce. For example, in a memorandum filed on July 11, 1980, defendant stated that the items plaintiff sought were unavailable in computer readable form. Motion for Sanctions Ex. A at 2–3. In an affidavit filed on September 25, 1980, and dated September 24, 1980, counsel for defendant, Mark C. Curran, Esq., stated that the only relevant material that was computer readable was a set of data which defendant's attorneys created specially for the defense of this case, the "litigation data base." Defendant asserted a privilege with respect to the litigation data base, contending it was prepared in anticipation of litigation and hence not discoverable under Fed.R.Civ.P. 26(b)(3). Counsel went on to state that aside from the litigation data base, defendant had no relevant computer readable material which it could provide to plaintiffs. Motion for Sanctions Ex. B at 2–3. Counsel did add, however,

I should further state that Wards will commence in November, 1980, to put a considerable amount of each employees [sic] personnel information in computer readable form. Wards plans to do this as part of an internal program, unrelated to this lawsuit. Wards will not, however, be putting any historical information into computer readable form. For example, it will not be putting information relating to salaries paid prior to 1980 into computer readable form.

*Id.* at 6. This computerization of Wards' personnel records apparently was of no concern to plaintiffs, since it would not even commence until November, 1980, and since it would contain no historical information describing personnel records from 1975 to the present, which was the time during which defendant's alleged employment discrimination had occurred.

Because plaintiffs considered access to computer readable information essential, they filed a motion to compel defendant to provide them with access to the litigation data base. In December, 1980, Judge Decker granted plaintiffs' motion, provided that plaintiffs assumed half the cost of assembling the data base. Defendant subsequently informed plaintiffs and Judge Decker that the cost of the system exceeded $121,000. Plaintiffs then took the deposition of Richard Strang, who was involved in assembling the litigation data base for defendant, in order to determine why the process was so expensive. At his deposition on July 15, 1981, Mr. Strang revealed that in fact defendant had already computerized its personnel records in a computer system known as the "People System." This process had begun in March of 1980, and had been completed in November of 1980. Thus, the statements in Mr. Curran's affidavit were incorrect.

On July 21, 1981, plaintiffs again filed a request for production under Fed.R.Civ.P. 34, seeking access to computer readable personnel information. Motion for Sanctions Ex. C. The request incorporated by reference ¶ 3 of the October 1979 request to produce, which embraced all books, documents, notes, memoranda, or other printed material containing codes associated with the data. Motion for Sanctions Ex. D. On August 14, 1981, defendant responded by producing a computer tape from its People System, a computer printout containing relevant data, a document entitled "People System Dictionary," and one sheet which it contended was responsive to ¶ 3 of the October 1979 request. Motion for Sanctions Ex. E.

After this production, plaintiffs' experts began working on the material defendant had disclosed. However, they soon realized that a number of the variables in the People System were coded and that the codes had not been provided by defendant. On December 21, 1981, and again on January 19, 1982, counsel for plaintiffs requested, by letter, that defendant provide plaintiffs with additional code books required to decipher the system. Motion for Sanctions Ex. F, G: In his letters, counsel provided several examples of codes which were not explained in the material which had been disclosed. On January 28, 1982, counsel for defendant responded by letter which had an attachment prepared by one of defendant's experts. The attachment began, "First, the variables contained in the PEOPLE System tape that were sited [sic] as 'not contained in the PEOPLE System dictionary' are not defined in a separate code book." Motion for Sanctions Ex. H1. The attachment went on to explain the meaning of the specific codes which had been used as examples ("sited") by counsel for plaintiffs in his letter. No additional codes or code books were produced.

Plaintiffs' experts went back to work, but found that even with the additional information, they were unable to decipher the People System. As a result, on March 30, 1982, plaintiffs took the depositions of two of defendant's computer experts, James Wilmotte and William Hess, in order to learn more about how the People System was coded. At the depositions, plaintiffs learned that in fact there were code books and other documents encompassed by ¶ 3 of the October 1979 request to produce which had not been produced by defendant, documents that were essential to understanding the People System. Motion for Sanctions Ex. J.

In their motion, plaintiffs seek costs and expert and attorney's fees associated with the time wasted because defendant did not promptly disclose the existence of the People System nor the codes essential to understanding that system. As to the failure to disclose the existence of the People System, defendant contends this was "inadvertent."

Defendant argues that the July 11, 1980 memorandum and Mr. Curran's affidavit of September 24, 1980 contained statements that counsel believed were true at the time. Defendant explains that some time after September 24, 1980, historical information was first put into the People System, and that counsel did not learn of this until Mr. Strang's deposition in July of 1981. However, Mr. Curran's affidavit indicates that defendant would "commence" putting employee data into computer readable form in November, 1980. That was a misrepresentation. Defendant "commenced" this process in March of 1980. Moreover, the affidavit states that the People System would contain no historical data. In fact, it did contain historical data, Plaintiffs' Reply in Support of Their Motion for Sanctions Ex. F. Since the system was operational by November, 1980, *id.* Ex. D, the decision to place historical material·in the system must have been made well before that. Thus, Mr. Curran's statement as to the contents of the system was also a misrepresentation.

■ We have every confidence that Mr. Curran did not intentionally mislead plaintiffs or the court. However, his affidavit contains material that is demonstrably false. Someone within the corporate hierarchy of defendant either intentionally, recklessly, or negligently supplied Mr. Curran with misinformation. The moral of this story is that lawyers should rarely if ever file their own affidavits, but instead should file affidavits of persons having first-hand knowledge of the relevant facts.[1] In any event, there is no conclusion possible except that someone culpably failed to disclose the existence of the People System in response to the plaintiffs' requests to produce.[2] As a result, plaintiffs suffered needless delay and additional costs as they attempted to obtain computer data which should have been turned over to them almost a year before it was disclosed. Had Mr. Curran been supplied with correct information, he would have been able to tell plaintiffs that computer readable data, including historical information covering almost the entire period at issue in the case, would be available by November of 1980.[3]

■ We turn next to defendant's failure to promptly disclose the coding necessary for plaintiffs' experts to understand the People System. Defendant correctly points out that its letter of January 28, 1982 did supply plaintiffs with the specific codes used as examples in plaintiffs' letter, and did offer to supply answers to any additional questions that plaintiffs might have. Thus, defendant seems correct to argue that it had adopted "an informal cooperative course of action" in response to plaintiff's July 21, 1981 request to produce. Response of Defendant Montgomery Ward & Co. to Plaintiffs' Motion for Sanctions at 9. However, "an informal cooperative course of action" is not what the federal rules of civil procedure call for. The rules require complete and accurate answers to requests

---

1. This practice is desirable for other reasons as well. *See* ABA Model Code of Professional Responsibility DR 5–102 (1981) (restrictions on lawyers becoming witnesses on behalf of their clients).

2. This failure was compounded since whoever provided Mr. Curran with the incorrect information subsequently failed to correct the misimpression he or she had created; the existence and contents of the People System remained concealed from plaintiffs until they took Mr. Strang's deposition in July of 1981. *Cf.* Fed.R.Civ.P. 26(e)(2) (A party is under a duty to supplement a response if the party learns a previous response to discovery was incorrect when made).

3. The record does not reveal who it was that supplied Mr. Curran with his information.

However, Mr. Curran was under a duty to obtain information from someone with first-hand information regarding the request to produce. We assume Mr. Curran did just that, that his affidavit was based on reliable information he obtained from persons with first-hand knowledge about defendant's personnel records. Thus, whoever Mr. Curran contacted surely knew about the People System and its contents, yet culpably failed to give Mr. Curran accurate information. No contention is made that Mr. Curran was unable to obtain accurate information despite his due diligence. To the contrary, it should have been easy for counsel to discover, with a minimum of effort, whether defendant had computer readable personnel data.

to produce. There is no dispute that plaintiffs properly requested all codes necessary to an understanding of the People System pursuant to rule 34. There is also no dispute that, whatever "informal" cooperation there was, defendant did not produce the requested codes. Instead, defendant required plaintiffs to identify the specific codes it was interested in before responding to plaintiffs' inquiries. Finally, and most importantly, there is no dispute that in fact there were codes, embraced in the July 21 request to produce, that were not produced on August 14 or any time thereafter, until plaintiffs were forced to depose defendant's experts. This was despite the fact that Mr. Curran had consulted with his experts in formulating the August 14 response, and those experts surely knew that there were additional code books and other written material which plaintiffs would require, yet they did not provide Mr. Curran or plaintiffs with that material.[4] Defendant failed to respond to the July 21 request to produce in a complete fashion.

 There is no dispute between the parties that a culpable failure to produce documents in response to a request to produce can be the basis for sanctions under Fed.R.Civ.P. 37(d).[5] Parties are required to respond to requests to produce in a complete and accurate fashion. *See, e.g., Haney v. Woodward & Lothrop, Inc.,* 330 F.2d 940 (4th Cir.1964); *Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 86 F.R.D. 396 (S.D.N.Y.1980); *United States v. Inter-*

*national Business Machines Corp.,* 76 F.R.D. 97 (S.D.N.Y.1977); *Milner v. National School of Health Technology,* 73 F.R.D. 628, 632 (E.D.Pa.1977); *Hunter v. International Systems & Controls Corp.,* 56 F.R.D. 617 (W.D.Mo.1972). This in turn requires that parties take reasonable steps to ensure that their responses to requests to produce are complete and accurate. *See Allen Penn Co. v. Springfield Photo Mount Co.,* 653 F.2d 17, 23 (1st Cir.1981); *Tavoulareas v. Piro,* 93 F.R.D. 11, 20–21 (D.D.C.1981); *Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 90 F.R.D. 410 (S.D.N.Y.1981); *In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 750, 751 (E.D.N.Y.1980); *Exxon Corp. v. FTC,* 466 F.Supp. 1088 (D.D.C.1978), *aff'd,* 663 F.2d 120 (D.C.Cir.1980); *Fisher v. Harris, Upham & Co.,* 61 F.R.D. 447, 450–51 (S.D.N.Y.1973), *appeal dismissed,* 516 F.2d 896 (2d Cir.1975). Ultimate production of the material in question does not absolve a party where it has failed to produce the material in a timely fashion. *Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370, 1374 (10th Cir.), *cert. denied,* 439 U.S. 832, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978). Once a failure to comply with the discovery rules is established, sanctions are appropriate; the degree of culpability is only a factor in determining the severity of the sanctions to be applied. *See, e.g., Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 207–08, 78 S.Ct. 1087, 1093–94, 2 L.Ed.2d 1255 (1958). Thus, a failure to

---

**4.** Defendant correctly argues that the request to produce involved technical matters not fully understood by counsel, so that whatever errors were made are understandable. This is certainly true, and counsel cannot be faulted for the problems that arose. However, in order to formulate a response to the request, counsel were obligated to consult defendant's computer experts, which they did. No contention is made that defendant's experts did not understand the request to produce, or that it embraced the necessary codes. Nevertheless, defendant's experts failed to supply the necessary codes. In this respect, counsel for defendant was as much a victim of defendant's experts as were plaintiffs.

**5.** Rule 37(d) speaks to the case where a party "fails ... to serve a written response to a

request ...." Here, defendant did serve a written response. The problem is that the response contained serious misrepresentations and failed to provide the material requested. Despite this, defendant appears to concede that rule 37(d) is applicable, since a response containing misrepresentations denying the existence of requested materials is as good as no response at all. Indeed, "dilatory and partial compliance" with a request to produce does not remove a case from the ambit of rule 37(d). *Charter House Insurance Brokers, Ltd. v. New Hampshire Insurance Co.,* 667 F.2d 600, 604 (7th Cir.1981). Moreover, apart from rule 37, sanctions can be imposed under the inherent powers of this court. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980).

make discovery, even if occasioned by simple negligence, may justify the imposition of sanctions. *See Compagnie des Bauxites de Guinea v. Insurance Co. of North America,* 651 F.2d 877, 885 (3d Cir.1981), aff'd sub nom. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* —— U.S. ——, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Marquis v. Chrysler Corp.,* 577 F.2d 624, 642 (2d Cir.1978); *David v. Hooker, Ltd.,* 560 F.2d 412, 418–20 (9th Cir.1977).

There is no dispute that defendant failed to provide complete, accurate and timely responses to plaintiffs' requests to produce. If, as we are willing to assume, counsel for defendant discharged their obligation to take all steps reasonably necessary in order to ensure that their responses to discovery were accurate and complete, counsel would have contacted defendant's computer experts to obtain assistance in framing responses to the requests to produce. It should have been quite easy for defendant's computer experts to answer the questions whether defendant maintained computer readable personnel records containing historical data, and what codes, code books and other materials were needed to understand the People System. Seemingly, defendant's counsel were supplied with inaccurate and incomplete answers to these questions, which counsel passed on to plaintiffs, and, in the case of Mr. Curran's affidavit, to the court. Moreover, in the case of Mr. Curran's affidavit, the plaintiffs and the court were seriously misinformed as to the contents of and the progress on the People System, misinformation that could only have come directly from defendant's experts, who must have known better.

■ In sum, defendant, through its agents, supplied counsel with misinformation in response to plaintiffs' requests to produce. Because the ease with which counsel should have been able to learn the answers to the questions plaintiffs had raised, we can only conclude that defendant's agents intentionally, recklessly, or negligently misled their counsel, plaintiffs and the court.[6] In light of this failure to supply accurate responses to discovery, the limited sanctions plaintiffs seek—costs and attorney's fees associated with defendant's failure to make timely production—are appropriate. *See, e.g., Marquis v. Chrysler Corp.,* 577 F.2d 624, 641–42 (2d Cir.1978); *Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370 (10th Cir.), *cert. denied,* 439 U.S. 872, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978); *General Atomic Co. v. Exxon Nuclear Co.,* 90 F.R.D. 290 (S.D.Cal.1981); *Antico v. Honda of Camden,* 85 F.R.D. 34 (E.D.Pa.1979); *Surg-O-Flex of America, Inc. v. Bergen Brunswig Co.,* 76 F.R.D. 654 (D.Conn.1977); *Fisher v. Harris, Upham & Co.,* 61 F.R.D. 447 (S.D.N.Y.1973), *appeal dismissed,* 516 F.2d 896 (2d Cir.1975).[7] Title VII class action cases such as this are difficult enough to bring without plaintiffs having to con-

---

**6.** Moreover, defendant failed to supplement Mr. Curran's inaccurate affidavit, in violation of rule 26(e)(2). *See Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1263, 1271–72 (8th Cir. 1974).

**7.** Defendant argues that plaintiffs are somehow barred from seeking sanctions for its failure to reveal the existence and contents of the People System until July 15, 1981, since plaintiffs did not seek sanctions at that time, but waited until now to move for sanctions. However, the colloquy between counsel and Judge Decker at that time reveals that plaintiffs hoped that their discovery problems could be resolved amicably, without need of judicial intervention. Plaintiffs can hardly be faulted for trying to avoid thrusting this problem on the court; the rules of this court require no less. *See* N.D.Ill.R. 12(d). Once plaintiffs' hopes proved unfounded, they promptly moved for sanctions. Defendant does not contend that it was prejudiced in any way by the delay, nor does it allege the elements of a waiver, estoppel or laches. We fail to see how plaintiffs' initial attempt to avoid a motion for sanctions precludes it from raising the instant motion.

Defendant also contends that the material in question is not really helpful to plaintiffs, and that named plaintiff Catherine E. Fautek should have been aware of the existence of the People System since she once filled out a form for it. Whatever the merits of these arguments, they should have been raised long ago, as part of a motion for a protective order under rule 26(c). Defendant is not free to conceal documents, only to later argue that they were not discoverable anyway. *See United States v. Reserve Mining Co.,* 412 F.Supp. 705, 710–11 (D.Minn.) aff'd, 543 F.2d 1210 (8th Cir.1976).

front obstructionist discovery tactics such as have occurred here. Thus, we grant plaintiffs' motion for sanctions "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam).

Plaintiffs' motion for sanctions is granted. Judgment will enter in favor of plaintiffs in the amount of $3,490.00 for costs associated with defendant's failure to produce.[8] Plaintiffs are also granted leave to file a petition for attorney's fees associated with defendant's failure to produce.

---

**8.** No contention is made that the fees are ex- cessive.