Edwin R. **PALM**, Appellant (Defendant),

v.

Mickii L. **PALM** and Ronald Sargent, Appellees (Plaintiff and Master).

No. 89–109.

Supreme Court of Wyoming.

Dec. 29, 1989.

Robert L. Nelson, Cheyenne, for appellant.

E. James Burke and Rhonda Sigrist Woodard of Hanes, Burke & Woodard, P.C., Cheyenne, for appellee Palm.

Ronald E. Triggs, Cheyenne, for appellee Sargent.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

We consider the confined issue of compensation awarded to a master following a divorce case appointment and subsequent removal by the district court for a pre-existing conflict. The issue extrudes from a hotly contested divorce proceeding about which dissatisfaction is apparent but from which no other appellate issues were pursued. We consider and affirm the compensatory award to the master of $2,660.[1] In actual context, present litigants are the master, Ron Sargent, and the husband, Edwin R. Palm, Jr.

Appellant, Edwin R. Palm, Jr., presents three issues: (1) authority and discretion of the district court to appoint a master; (2) propriety of compensating the master for partial performance before his disqualifica-

---

1. We are presented with another appellant's brief in which almost no record references are made to support identification of pleadings or contentions of fact. *Kost v. Thatch,* 782 P.2d 230 (Wyo.1989). Perhaps it will clarify if we repeat—facts are not established for appellate review unless references to the record are provided.

There may be a difference of $5 in the compensatory award to the master.

tion; and (3) sufficiency of the evidence to sustain the amount awarded.

After about seven years of marriage, Mickii Palm and Edwin R. Palm, Jr. came to split the sheets, but then tried to do it in near actuality during an acrimonious divorce lawsuit when all items of personal property seemed to invoke division and distribution contest. This is sometimes called the parakeet or grandfather clock divorce case. Incentive for argument was further added by the existence of a pre-marital property agreement initiating defensive claims of appellant that:

5. * * * the parties have acquired no real or personal property during the course of their marriage.

6. * * * any property division is governed by a Prenuptial Agreement executed by the parties.

On February 22, 1988, the district court resolved general issues of divorce by a decision letter with an included proviso:

The division of property will be resolved after both parties have submitted additional documents as the Court has requested.

* * * * * *

After I receive[ ] the supplemental filings concerning the property division, I shall resolve the other issues remaining in this matter.

Occurring next was the appointment of a master to divide personal property which the parties and their counsel had been unable to accomplish. Ron Sargent was named by district court order of April 7, 1988 which, as approved as to form by both litigants, provided:

THE ABOVE–ENTITLED MATTER having come on before the Court upon the oral Motions of the parties to resolve personal property issues and the Court having heard the arguments of counsel and having reviewed several lists submitted to it in the Trial of the issues of this matter and having further reviewed the file herein and being fully advised does order as follows:

1. That the Court hereby appoints Ron Sargent as a Master for the purposes of listing the disputed personal property between the Plaintiff and Defendant and making recommendations regarding its ownership. That the costs of Mr. Sargent's services shall be borne and paid for by the defendant, Edwin R. Palm.

2. That the Master together with the Plaintiff and Defendant shall look at all personal property located in the home in which the Defendant is residing, all personal property which the Plaintiff has in her home and all personal property of the parties discovered to be elsewhere to determine the ownership of said property.

If the property is not in dispute as to ownership the party owning said property shall be allowed to take the property with him or her.

3. That disputed items of personal property shall be listed by the Master and he shall listen to the arguments of each of the parties concerning each piece of property and shall make his recommendation as to how the Court should distribute said items of disputed property.

4. The property which is determined by the Master and/or the Court to be marital property shall be listed separately. The parties shall accompany David Zwonitzer or another reputable auctioneer appraiser designated by Plaintiff to view the property and obtain an auction appraisal of the value of the property. Defendant shall pay Plaintiff the percentage of the auction appraised value of the property, without any amounts deducted for commission or costs, as the Court determines should belong to Plaintiff, and Defendant shall then be entitled to keep the property. If the Defendant chooses not to purchase the property, it should be auctioned and the proceeds divided between the parties in the percentages determined by the Court.

5. That the distribution of personal property as anticipated under this Order should be accomplished as soon as reasonably possible.

On August 30, 1988, Sargent filed a master's report which listed everything down to mailing labels, cloth flowers and paper napkins in six separate lists, including more than 400 defined items. In conjunction with filing the report, he also submitted a statement to appellant's attorney totaling $2,945 for services rendered to which immediate objection was taken. A hearing was held by an order to show cause in early December to consider the fee objection. While that proceeding was pending before final decision, appellant filed an objection to Sargent acting as master and a motion to set aside Schedule C and other property division recommendations. After a considerable amount of additional fussing and filings, the contested judgment for the master's fee was entered on March 13, 1989, from which this appeal is taken.[2]

The divorce decree was entered September 28, 1988 and following entry of the master's fee order, the "Order Disqualifying Ron Sargent as Master, Setting Aside Schedule 'C' and Order Granting Judgment and Attorneys Fees" was entered on April 11, 1989. Appeal was neither taken from the decree of divorce nor the April 11, 1989 disqualification order which, in itself, did not reconsider the March 13th compensatory award.

## I. AUTHORITY AND DISCRETION OF THE DISTRICT COURT TO APPOINT A MASTER

The mutual agreement by the parties for the appointment of a master was recognized in oral argument and briefing, as well as by attachments to the contested judgment with a concurrent understanding from the litigants that payment for services would be made by the husband. It is also established that both litigants knew in advance of the district court designation that the proposed master, Sargent, in the presence of the husband, had engaged at the request of the wife in taking a video tape inventory of personal property at the parties' residence. Following district court conference (not reported), the parties' proposal to appoint Sargent as master to divide the personal property was accepted by the district judge. Thereafter, objection was not taken by either party to the deputation or performance until appellant objected in December 1988 following his receipt of the master's bill for fees.

---

**2.** The order found in awarding $2,660 compensation:

THIS MATTER having come before the Court on the motion of the Master for an order to show cause why the Master's fees should not be paid, and on the Defendant's response to Master's motion herein, the Court finds as follows:

1. The parties agreed to appointment of a master and the movant, Ronald Sargent, was appointed Master in the above-entitled action by order of this Court dated 4 April 1988, and filed for record 7 April 1988.

2. The movant submitted his statement to defense counsel, consistent with that order hereinabove, on or about 12 September 1988, and payment for said statement was denied.

3. The movant Master filed Schedules A, B and C and the defendant has challenged Schedule C. Schedule C was set aside, new evidence adduced, because the Master was disqualified.

4. The Court finds that the Master discharged his duties responsibly, efficiently and in good faith, but sets aside the schedule because of the appearance of impropriety.

5. The Court finds that the movant, Ronald Sargent, performed his duties as Master in accordance with the order of this Court, and that his services were performed in anticipation of receipt of a fee for his services herein.

6. The Court finds that $40.00 per hour for time actually expended in the performance of his duties as Master is fair and reasonable.

7. The Court further finds that a fee of $25.00 per hour for travel fees is reasonable.

8. Even th[ ]ough the Master was disqualified, he nevertheless has provided valuable services to the parties, particularly in preparing Schedules A and B which were never challenged by defendant and also the work performed on Schedule C materially assisted the parties and the Court in the resolution of the dispute. Accordingly, the Master should in fairness be compensated for the value of his services and the Court finds that the Master has bestowed value upon the parties.

9. The Court has examined the statement of the movant, Ronald Sargent, herein and finds reasonable a reduction in fees from $40.00 to $25.00 per hour for travel time, reducing the statement by the sum of $280.00.

\* \* \* \* \* \*

11. The Court finds that defendant should pay the Master's fees especially in view of the correspondence attached.

Any claim of abuse of discretion in assignment is foreclosed by failure to timely object or, as in this case, actual acceptance. If objection to the appointment is to be taken by a litigant, it must be made timely by filed objection and, if possible, before performance of the service as master is undertaken by the appointee. *See B & W Cattle Co. v. First Nat. Bank of Hereford*, 692 S.W.2d 946 (Tex.App.1985). *United States v. Conservation Chemical Co.*, 106 F.R.D. 210, 227 (W.D.Mo.1985) states:

> Whether the combination of circumstances which prompted the appointment of a Special Master constitutes an "exceptional condition" justifying the reference is a procedural matter to which personal objection should be made, unless as a matter of law the trial court abused its discretion concerning the appointment. * * * In particular, the nature of an objection to the appointment of a Special Master should be specifically stated, and a party has no right to rely on the objection of another. * * * In general, objections must be sufficiently specific to bring into focus the precise nature of the alleged error.

The failure to make timely objection, either at the time of the order of reference or promptly thereafter, constitutes a waiver of error. *Charles A. Wright, Inc. v. F.D. Rich Co.*, 354 F.2d 710 (1st Cir.), *cert. denied* 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673, *reh'g denied* 385 U.S. 890, 87 S.Ct. 14, 17 L.Ed.2d 122 (1966); *McGraw–Edison Co. v. Central Transformer Corp.*, 308 F.2d 70 (8th Cir.1962); *Fisher v. Harris, Upham & Co., Inc.*, 61 F.R.D. 447 (S.D.N.Y.1973). "Parties should object to a reference to a magistrate or a special master at the time the reference is made or within a reasonable time thereafter." *Spaulding v. University of Washington*, 740 F.2d 686, 695 (9th Cir.), *cert. denied* 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). A litigant cannot claim error in exercised discretion unless disapproval of a proposed decision is recorded. *Sharp v. Sharp*, 671 P.2d 317 (Wyo.1983); *Louth v. Kaser*, 405 P.2d 276 (Wyo.1965); *Debruyn v. Golden Age Club of Cheyenne*, 399 P.2d 390 (Wyo.1965). A recent statement of the rule is that "[a] party cannot appeal from a judgment or order to which the party has [substantively] consented." *State v. Coheley*, 549 So.2d 483, 483 (Ala.1989).

■ Disposing of abuse of discretion, there remains the appellant's denial of the district court's actual delegation authority. *See B & W Cattle Co.*, 692 S.W.2d 946. Our decision in *Cross v. Cross*, 586 P.2d 547 (Wyo.1978) and W.R.C.P. 53 (similar to F.R.C.P. 53) is dispositive. *See In re General Adjudication of All Rights to Use Water in the Big Horn River System*, 753 P.2d 76 (Wyo.1988), *cert. granted in part* — U.S. ——, 109 S.Ct. 863, 102 L.Ed.2d 987, *aff'd* — U.S. ——, 109 S.Ct. 2994, 106 L.Ed.2d 342, *reh'g denied* — U.S. ——, 110 S.Ct. 28, 106 L.Ed.2d 639 (1989). The prerogative of the district court to appoint a master is not only established in general law, but is expressly provided by W.R.C.P. 53. On the comparable subject of receivership, appellant "having invoked the jurisdiction of the court to appoint a receiver of [his] property (the court having jurisdiction over the subject-matter), [he] will not thereafter be permitted to question the validity of such appointment for the want of jurisdiction." *Spence v. State Nat. Bank of El Paso*, 5 S.W.2d 754, 756 (Tex.App.1928). Appellant's abuse of discretion and authority arguments are unfounded.

## II. ALLOWANCE OF ANY COMPENSATION

■ The second issue addressed is any allowance of compensation for the receiver although authorized pursuant to W.R.C.P. 53(a) where, after part or total performance, the designee is withdrawn on the basis of disqualification. We will decide this case on the narrow basis presented that arguable cause for disqualification was equally known to both litigants before district court action. If a litigant is to object to naming a particular person, objection becomes untimely where, after notice, the order of deputation is entered without objection.

Correspondence in this record, written substantially in advance of any district

court action, detailed the litigants' mutual understanding about the appointment of a master, the designation of Sargent and the husband's fee payment responsibility. As illustrative, a letter from counsel for wife to counsel for husband dated more than a month before the district court action stated:

> I have discussed with Mickii Palm our proposal to allow Ron Sargent to be appointed Master in this matter with regard to the disposition of personal property. It is my understanding that Mr. Sargent would accompany Mr. and Mrs. Palm to the farmhouse in Albin and the barn in Nebraska and determine which items are in dispute with regard to their disposition. Each party would be able to take the items which the other party agrees belong to him or her. Mr. Sargent would make a list of the disputed items and make a recommendation to the Court with regard to the ultimate disposition of these items.

> Mickii Palm is willing to agree to the appointment of Mr. Sargent as Master for the purposes set forth above. It is our further understanding that the Court would order Mr. Palm to pay the costs associated with Mr. Sargent's activities as a Master. If this arrangement is agreeable with your client, please prepare the necessary Stipulation and provide it to me for signature. Thank you.

Since the facts relating to the cause for potential objection or disqualification were known to both parties in advance of the district court designation, we conclude their agreement for payment of costs of services rendered after the master's appointment continued until district court removal. *Sharp*, 671 P.2d 317. W.R.C.P. 53 provides the district court's general authority to approve a fee payment which was exercised by the district court order entered, leaving the reasonableness of the amount provided remaining.

### III. REASONABLE LEVEL OF COMPENSATION

██ An evidentiary hearing was held. Appellant before and since continues to assert, if anything is paid to the master, that the amount charged to him should be limited to benefit and not determined by a time and rate computation. This is described by this court and other tribunals as the lodestar test. See *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584 (Wyo.1989). Actually, his argument is three-fold: (1) under the circumstances of prior service performed for the wife, the appointed master should not be compensated in any amount when later disqualified before completion of task; (2) benefit to the litigants should be the measure of compensation if any is given; and (3) in any event, considering the nominal value of the personal property items, any award of $2,660 as a billing was completely unreasonable. Appellant specifically cites as his authority for abuse of discretion "*Klekamp v. Klekamp*, 275 ILL 98 [113 N.E. 852] (ILL.1916);" "*Boone v. Boone*, 3 NJ Misc. 291 [127 A. 819] (N.J.1925)"; "*Rosenfield v. Rosenfield*, 1954 134 NYS 2nd 686, (NY 1954) [205 Misc. 1095, 131 N.Y.S.2d 686, *rev'd in part* 284 A.D. 937, 134 N.Y. S.2d 787 (1954)];" and "89 ALR 2nd 377 [Annotation, *Amount of Master's Fee in Divorce Proceedings*, 89 A.L.R.2d 377 (1963)]."

Those authorities lack persuasion in demonstrating that the district judge erred in award of compensation to the master pursuant to the W.R.C.P. 53 grant of authority and discretion. *Rosenfield v. Rosenfield*, 205 Misc. 1095, 131 N.Y.S.2d 686, 688 *rev'd in part* 284 A.D. 937, 134 N.Y.S.2d 787 (1954) approved the fee granted by the trial court as follows:

> The court may [fix a non-statutory rate of compensation] * * * subject, only, to the implied condition that the rate actually fixed be a reasonable one depending on the length of time devoted, the skill and industry applied, and the importance of the matter involved, in a particular reference.

*Boone v. Boone*, 3 N.J. Misc. 291, 127 A. 819 (1925) denied by statutory construction secretarial services charged to prepare the record in an amount in excess of a state provision confining fees to a folio based

total. *Klekamp v. Klekamp*, 275 Ill. 98, 113 N.E. 852, 856 (1916) reduced the compensation for the master which was billed at $35 per day by stating that the amount "which is about as much, or more, than the judge who tried the case receives for each day he is actually engaged in the duties of his office, and as a matter of common knowledge it is more than twice as much as was ever paid in Chicago for judges from other jurisdictions while employed in the courts of Cook county." [3] *Currence v. Currence*, 123 W.Va. 599, 18 S.E.2d 656 (1941) does not add additional precedent since the $225 fee for the 225 hours was not reversed.[4]

Not only by the express provision of W.R.C.P. 53 but accompanied by a comprehensive body of law, the question of compensation is to be determined by the district court as a matter of discretion. In *UNC Teton Exploration Drilling, Inc.*, 774 P.2d 584, we recognized the lodestar concept for initial computation of time and rate to which variable factors may be applied within the discretional decision. We perceive from the evidence that the district court specifically followed this pathway for discretion and decision by relating circumstance to the itemized amount submitted and making adjustments found to be appropriate in the interest of fairness. The rule for the master's fee allowance is settled in Annotation, *Amount of Master's Fee in Divorce Proceedings*, 89 A.L.R.2d 377 (1963), where it is stated to be dependent upon the circumstances and proportional to the nature of the services rendered as determined to be reasonable within the discretion of the trial court. Evidence in this record for application of the district court's discretion supports the decision as to the extent and value of services provided.

Testing trial court discretion in earlier times, it was said in *Finance Committee of Pennsylvania v. Warren*, 82 F. 525, 526–27 (C.C.A.Ill.1897):

The eighty-second rule in equity prescribed by the supreme court provides that "the compensation to be allowed to every master in chancery for his services in any particular case shall be fixed by the circuit court in its discretion, having regard to all the circumstances thereof." Our review of the decree complained of is therefore necessarily limited to the question whether the discretion of the court has been improvidently exercised. A master in chancery occupies, it is true, a position of responsibility and of trust. The court looks to him to execute its decree thoroughly, accurately, and in full response to the confidence extended to him. His compensation should be measured accordingly. He should be remunerated for the actual work done, and the time employed, and the responsibility assumed. The amount of compensation should be fixed with due regard to the magnitude of the interests involved, and to the responsibility of the position. The amount of such compensation, while it should be reasonable, and perhaps liberal, should not be exorbitant.

---

**3.** A rule of this character in Wyoming would create singular problems considering the standard of present judicial salaries and hours of work now over seventy years later is between $20 and $30 per hour.

**4.** In *Currence*, 18 S.E.2d at 658, the case concerned the interesting divorce problems of condonation when the wife, responding to being called a whore, responsively called her husband a son-of-a-bitch and

whereupon he reached for her throat and she seized an empty teakettle with which to protect herself, upon which the defendant struck her two or three times with his fist finally knocking her down, and kicking her two or three times as she lay on the floor against the wall; that at this time, the maid appeared from her room over the kitchen, and that,

upon her intervention, the defendant retired from the room. The plaintiff says that the blows were of such a character as to leave wounds on her face and about her body; that she was badly injured and stunned, and that she and the maid went to the car for the purpose of getting a doctor's assistance when the defendant appeared and refused them the use of the automobile; that then she and the girl went to her mother's home for the night.

Unfortunately for her, they got back together for a time before she finally filed for divorce. She was then denied the divorce by application of the condonation defense. The court considered the time spent by the master excessive, but granted the fees requested at about one dollar per hour.

At issue in that case was the originally granted award of $4,000 resulting in a reduction by the appellate court to the 1897 total of $2,500. This concept for analysis was adopted by the United States Supreme Court in *Newton v. Consolidated Gas Co. of New York,* 259 U.S. 101, 42 S.Ct. 438, 66 L.Ed. 844 (1922). *See also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2608 at 794 (1971).

This court similarly, in the early Wyoming case of *Kilpatrick v. Horton,* 15 Wyo. 501, 506–07, 89 P. 1035, 1036 (1907), established:

> The question of the amount if any of such allowance in the absence of a statute fixing them [receivership fees] is within the jurisdiction of the court * * *, and should be judicially determined and allowed upon a basis of what is reasonable and commensurate with the services rendered and to be rendered.

Here, the district court approved a fee award to the master of $40 per hour for general time and $25 per hour for travel time when adjudged to be reasonable after reduction of $280 relating to travel reimbursement time. In comparable terms, if we assess standards of a per hourly rate of payment for professional athletes or even the amounts ranging from a mechanic's rate to a specialist's fee, we perceive no abuse of discretion in the hourly rate awarded to this individual as an appointed agent of the district court. The court in *Morgan v. Kerrigan,* 530 F.2d 401, 427 (1st Cir.), *cert. denied* 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386, *cert. denied,* 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386, *reh'g denied* 429 U.S. 873, 97 S.Ct. 193, 50 L.Ed.2d 156 (1976) summarized the view we find to be compatible with Wyoming rule and precedent:

> The district court has broad discretion in fixing the amount of such compensation and in determining which of the parties to charge. F.R.Civ.P. 53(a). Here there is no basis for concluding that the district court abused its discretion. The grounds for the School Committee's objection is its belief that the reference to the masters was unnecessary and unwise and that the masters expended a great deal of time and energy fruitlessly. Assuming arguendo that these allegations would constitute grounds for setting aside the district court's order, we note that the district court reasonably reached contrary conclusions regarding the necessity and utility of the masters' work. We hold that there was no abuse of discretion.

Affirmed.