559 F.2d 203
 ISRAEL AIRCRAFT INDUSTRIES, LTD., Zohar Landau, Nira Landau, Mordechai
Muscatel, Zila Muscatel, Hagai Koren and Dalia Koren,
Plaintiffs, Israel Aircraft Industries, Ltd.,
Zohar Landau, Mordechai Muscatel and
Hagai Koren, Plaintiffs-Appellants,
v.
STANDARD PRECISION, a Division of Electronic Communications,
Inc., Electronic Communications, Inc., The
National Cash Register Company and North
American Rockwell Corporation,
Defendants-Appellees.
 Nos. 1174, 1413, 1414, 1415, Dockets 76-7591, 76-7613,
77-7016 and 77-7048.
 United States Court of Appeals,
Second Circuit.
 Argued May 26, 1977.
Decided July 7, 1977.
 
 George N. Tompkins, Jr., New York City (Condon & Forsyth, William L. Schierberl, Thomas J. Whalen, Marshall S. Turner, Hale, Russell, Gray, Seaman & Birkett, New York City, John S. Russell, Selvyn Seidel, P. Michael Anderson, New York City, of counsel), for plaintiff-appellant Israel Aircraft Industries, Ltd.
 Norman Leonard Cousins, New York City (Fuchsberg & Fuchsberg, New York City, of counsel), for plaintiffs Zohar Landau, Mordechai Muscatel and Hagai Koren.
 Ernest D. Kennedy, New York City (Mendes & Mount, New York City, Dennis C. Murphy, James P. Donovan, New York City, of counsel), for defendants-appellees.
 Before VAN GRAAFEILAND, Circuit Judge, MEHRTENS* and PIERCE,** District Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 These are appeals from orders setting aside jury verdicts in favor of the plaintiffs and dismissing the complaint sua sponte for failure of the plaintiffs to disclose the existence of certain releases given by the individual plaintiffs to their employer, Israel Aircraft Industries, Ltd. (IAI). We affirm the orders to the extent that they set aside the jury verdicts but reverse insofar as they dismiss plaintiffs' complaint. We remand the matter to the District Court for retrial as to all of the defendants except North American Rockwell Corporation, which was exonerated from liability on the original trial.
 
 
 2
 This action arises out of the 1970 crash of an IAI jet airplane manufactured by Rockwell with Standard Precision, hereinafter Standard, as one of its subcontractors.[1] The individual plaintiffs were IAI employees who sustained injuries when they bailed out of the falling plane. A substantial portion of IAI's property loss was covered by insurance which was paid. Thereafter, IAI's insurance carrier, pursuing its subrogation rights under the policy, commenced this action in IAI's name to recover for the loss. The carrier's attorneys for purposes of this suit were Condon & Forsyth of New York City. At the request of their client, Condon & Forsyth also sued on behalf of the injured employees, all of whom were residents of Israel. The defendants interposed a counterclaim against IAI for indemnity and contribution towards any damages they might have to pay the injured crew members. Thereafter, the New York firm of Fuchsberg & Fuchsberg was substituted for the Condon firm as attorneys for the individual plaintiffs. This somewhat unusual sequence of events laid the groundwork for the misunderstandings which resulted in the orders appealed from.
 
 
 3
 Before the action was commenced, English counsel for the Condon firm sent a questionnaire to IAI seeking pertinent information from the injured employees. Included among the questions were inquiries concerning payments received by the employees because of their injuries. Their answers indicated that payments totaling ninety thousand Israeli pounds (approximately $11,000) had been paid to them by their employer and would have to be repaid out of any recovery in the proposed litigation. Similar information was given by the employees when their pretrial depositions were taken by the defendant.[2] All counsel involved assumed that these payments were in the nature of Workmen's Compensation, such as would be paid under the law of New York; and, for this reason, none of the attorneys sought more detailed information concerning the transaction. In fact, the payments were made voluntarily in exchange for releases exonerating IAI from liability for the accident.
 
 
 4
 The original releases were placed in the personnel files of the injured employees but were not forwarded to New York with the many other documents needed to process the litigation. IAI asserts that the releases were never requested of it by counsel for its subrogated insurance carrier and that they were not forwarded on IAI's own initiative because it believed they were limited releases exonerating IAI alone and therefore had no relevance to the third-party action. IAI also avers that it was not informed that a counterclaim was being interposed against it as a result of the personal injury claims, pointing out that the defense of this counterclaim was routinely undertaken by the attorneys for its insurance carrier.
 
 
 5
 Counsel representing the Condon firm agrees that he made no request of IAI for the personnel records of the injured employees, despite the fact that a demand for production of these records was made by Standard's attorneys and despite counsel's subsequent assurance to Standard's attorneys that he was in the process of obtaining them. When Standard moved at a later date to dismiss IAI's complaint for failure to answer interrogatories and produce documents, one of IAI's attorneys stated in an opposing affidavit that plaintiffs had already produced a substantial number of documents "which constituted all the documents in its possession which relate to the facts of this case." In the same affidavit, the attorney stated upon information and belief that substituted counsel for the injured employees had transmitted or were in the process of transmitting to defendant's counsel the employees' personnel records. Substituted counsel swear, however, that they did not know of the existence of the releases and of course did not deliver them to defendants.
 
 
 6
 The case thus proceeded to trial with the court and defense counsel concededly having no knowledge of the releases and with plaintiffs' counsel allegedly having no such knowledge. The trial was bifurcated; and the jury, deciding the liability issue separately, found that Standard's negligence contributed 35% to the crash and IAI's negligence 65%. Thereafter, when the trial was continued on the issue of damages, the District Judge informed counsel in open court in the absence of the jury that, as a result of the jury's verdict on liability, he intended to charge that the individual plaintiffs would henceforth be in the position of suing both IAI and Standard. Although the District Judge later decided that this charge should not be given, his statement prompted one of the injured plaintiffs to inform his attorney that the crew members may have signed some kind of release which prevented them from suing their employer. During the luncheon recess on that same day, the employees' attorney questioned counsel for IAI concerning the possible existence of releases and was informed that counsel knew of no such documents. However, because of the inquiry, IAI counsel sent a telegram to IAI in Israel inquiring about releases and seeking copies if they existed.[3]
 
 
 7
 Several days later, the jury returned a verdict finding the property damage of IAI to be $860,000 and the personal injury damages of the three crew members to be a total of $425,000. When he returned to his office following this verdict, IAI counsel found a reply to his telegram which contained a rough translation of a release executed by the plaintiff Landau, the original of which was in Hebrew, with information that substantially similar releases had been signed by the other two crew members. Counsel made immediate arrangements to secure advice from an Israeli attorney as to the legal effect of the documents and thereafter went personally to Israel to inquire further into the matter. Upon his return to the United States, he moved on behalf of IAI to assert the releases as a defense to Standard's counterclaim and to reduce the crew members' recovery from Standard by 65%, the amount of IAI's proportionate share of liability.
 
 
 8
 Needless to say, the District Judge was greatly upset when he learned of the undisclosed releases. Instead of granting IAI's motion, he dismissed the complaint sua sponte under Fed.R.Civ.P. 60(b) for fraud perpetrated on the court and under Fed.R.Civ.P. 37(b)(2)(C) for failure to make discovery. This order, reported at 72 F.R.D. 456 is the first order on appeal. Thereafter, appellants moved for reargument at which they would have an opportunity to be heard and at which IAI might be represented by separate counsel instead of the attorneys for its subrogated insurance carrier. The order denying this application is the second order before us on this appeal.[4]
 
 
 9
 Appellants' argument that their action should not have been dismissed without a hearing is not without precedential support. It has been held, for example, that although a judge has the power to set aside a judgment obtained as a result of fraud on the court, see Kupferman v. Consolidated Research & Manufacturing Corp., 459 F.2d 1072, 1078 (2d Cir. 1972), this power should rarely be exercised upon the basis of affidavits alone, without giving the parties an opportunity to be heard. Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946); see Jackson v. Irving Trust Co., 311 U.S. 494, 499, 61 S.Ct. 326, 85 L.Ed. 297 (1941). Moreover, where the court not only vacates a judgment, but also dismisses the complaint, a question of due process may arise if this is done sua sponte without a hearing. See Societe Internationale v. Rogers, 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); Securities & Exchange Commission v. Research Automation Corp., 521 F.2d 585, 588 (2d Cir. 1975); Flaks v. Koegel, 504 F.2d 702, 712 (2d Cir. 1974). We prefer, however, not to dispose of this appeal on the basis of this quasi-procedural argument. The reputations of two established New York law firms, an internationally known Israeli corporation and at least five individuals are at stake. They are entitled to have this appeal decided on the merits.
 
 
 10
 Because no hearing was held below, we may examine the affidavits submitted by appellants to the District Court in the same fresh light as did the District Judge. Orvis v. Higgins, 180 F.2d 537, 539 (2d Cir.), cert. denied, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950). We have made such an examination and have painstakingly reviewed the entire record. Having done so, we conclude that neither appellants nor their attorneys were guilty of a fraud upon the court. There were misunderstandings, lack of communication and, in some instances, carelessness. However, there was no intentional fraud.
 
 
 11
 We have here a situation in which IAI paid a total of $11,000 to three employees, whose personal injuries a jury found to be worth $425,000. It is most unlikely that either IAI or its employees intended that the releases given in return for this relatively modest payment would exonerate the manufacturer of the plane and all other third parties who might be responsible for the crash.[5] It is equally unlikely that either IAI or its insurance carrier would jeopardize the possible recovery of almost one million dollars for the loss of the IAI jet by deliberately concealing the fact that IAI had settled with its employees for $11,000. Indeed, the very logistics of attempted concealment indicate that it was never intended. Concealment would require cooperative deceit by attorneys in Israel, London and New York, their associates and employees, together with the injured employees, their wives, who brought derivative actions, and numerous officials and employees of IAI.
 
 
 12
 In view of the crew members' agreement to repay the $11,000 to IAI out of any recovery in the third-party action, the possibility of a double recovery by these plaintiffs, which troubled the District Court, was non-existent. Assuming that the third-party action was not barred by the releases, it did not differ in substance from those brought to our courts almost daily by recipients of Workmen's Compensation benefits. The employer is repaid out of the proceeds of the third-party recovery.
 
 
 13
 Under the circumstances of this case, we do not find it incredible that plaintiffs' attorneys in New York were unaware of the releases. Attorneys who handle insurance subrogation claims discover very quickly that insureds whose losses have been paid by their own carrier do not always support with enthusiasm the carrier's efforts at third-party recovery. Subrogation per se imposes no duty of cooperation upon the insured, 16 Couch on Insurance, § 61.23 (2d ed. 1966); and the enunciation of such an obligation in the policy does not invariably create an open line of communication between the insured and the insurer's attorney. Where, as here, four thousand miles of ocean separate the foreign insured from the New York attorneys, full and complete disclosure is even less likely to occur. This does not mean, of course, that the attorneys should not have made proper effort to secure information which was demanded of them by the defendants, and their failure to do so cannot be condoned. We do not, however, equate laxity with fraudulent intent. The verified uncontroverted statements of the attorneys disclaiming knowledge of the releases are entitled to belief. Estate of Murdoch v. Pennsylvania, 432 F.2d 867, 870 (3d Cir. 1970). There was insufficient proof of fraud to warrant the drastic penalty imposed below.
 
 
 14
 Having concluded that plaintiffs were not guilty of fraud, we may quickly dispose of appellees' argument that dismissal was proper under Fed.R.Civ.P. 37(b)(2)(C). In their answers to the questionnaire from the IAI attorneys, which the District Court mistakenly treated as defendants' interrogatories, the crew members disclosed that "ex gratia" payments had been made to them by IAI and stated that these would have to be refunded to IAI out of the proceeds of the litigation. On their depositions, the injured employees testified that this money was paid to them because of the injuries they had sustained in the accident and reiterated that it would have to be repaid from any recovery in the law suit. We do not agree with the District Court's holding that these answers were so evasive and incorrect as to be the equivalent of a failure to answer. Taking into account the language problem which existed, we find them to be reasonably correct replies to the queries which were made.
 
 
 15
 Dismissal under Fed.R.Civ.P. 37 is a drastic penalty which should be imposed only in extreme circumstances. Securities & Exchange Commission v. Research Automation Corp., supra, 521 F.2d at 588; Independent Productions Corp. v. Loew's Inc., 283 F.2d 730, 733 (2d Cir. 1960). The conduct of the plaintiffs herein was not such as to warrant this harsh sanction. Moreover, because subdivision (b) of Rule 37 applies only for " Failure to comply with order", dismissal under this subdivision was improper in the absence of an order. Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 995 (8th Cir. 1975). And, because subdivision (d) of Rule 37 applies only where there has been a complete failure to comply with discovery, dismissal was unwarranted herein because plaintiffs did appear and testify. Securities & Exchange Commission v. Research Automation Corp., supra, 521 F.2d at 589.
 
 
 16
 We are most sympathetic with the District Judge's concern for the integrity of the judicial process, and we agree wholeheartedly that no litigant should be permitted to tamper with the administration of justice. We also agree that, because of mistakes and inadvertences which have admittedly occurred, the verdicts, except as to the defendant Rockwell, should not be permitted to stand. However, because we find lacking the element of fraud which led the District Court to dismiss the complaint, we conclude that its dismissal was unwarranted.[6]
 
 
 17
 The orders appealed from are reversed insofar as they dismiss with costs the complaint against the defendants Standard Precision, a Division of Electronic Communications, Inc., Electronic Communications, Inc. and The National Cash Register Company. The jury verdicts as to all parties except Rockwell are vacated, and the matter is remanded to the District Court for retrial as to the remaining defendants. Costs of this appeal are allowed to neither party.
 
 
 
 *
 Of the Southern District of Florida, sitting by designation
 
 
 **
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 The defendants, other than North American Rockwell Corporation, are related corporations and have been treated as a single entity throughout the litigation
 
 
 [2]
 The District Court mistakenly characterized the employee questionnaire as "defendants' interrogatories". However, copies of the questions and answers were given to defense counsel by plaintiffs' attorneys prior to the start of depositions
 
 
 [3]
 The telegram read in pertinent part as follows:
 "Further, Zohar Landau has asked that we obtain a copy of an agreement which he recalls signing in your office. He has described it as being a legal document written in Hebrew concerning the subject of his reimbursement and possibly containing a hold harmless clause between himself and IAI. If possible, he would appreciate obtaining a translation by someone in your legal department or by yourself."
 
 
 [4]
 The District Judge granted IAI's motion for separate representation only to the extent that it considered the affidavits which IAI submitted
 
 
 [5]
 The District Court specifically refused to pass upon the legal effect of the releases; and we make no determination on this issue, leaving it for resolution on the retrial
 
 
 [6]
 Appellee also asserts that IAI was guilty of champerty and maintenance because it agreed to advance its employees' litigation expenses, the advance to be repaid if the suit was successful. This argument was not adopted by the District Court, and we find it to be completely without merit. Maintenance cannot be charged against one having an interest in the subject matter of a suit, Chester H. Roth, Inc. v. Esquire, Inc., 186 F.2d 11, 15 (2d Cir.), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1354 (1951); and such an interest may arise from the relationship of master and servant which existed herein. 14 C.J.S. Champerty & Maintenance § 26, at page 368; 14 Am.Jur.2d Champerty & Maintenance § 9, at 847; Thallhimer v. Brinckerhoff, 3 Cow. 623, 647-48, 15 Am.Dec. 308 (1824)