**PETROLEUM INSURANCE
AGENCY, INC., et al.,**

v.

**HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, et al.,**

v.

**John H. SULLIVAN, Additional
Defendant On Counterclaim.**

**Civ. A. No. 80–2782–T.**

United States District Court,
D. Massachusetts.

May 14, 1985.

Edward T. Dangel, III, Dangel & Sherry, Boston, Mass., for plaintiffs.

Jeffrey B. Storer, Ropes and Gray, Boston, Mass., for defendants.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SANCTIONS FOR FAILURE TO MAKE DISCOVERY (# 225)

ROBERT B. COLLINGS, United States Magistrate.

## INTRODUCTION

The Complaint in this case was filed in the Superior Court of the Commonwealth of Massachusetts on November 14, 1980 and was removed to this Court on December 12, 1980. In Count III of the Complaint, the plaintiffs claim that as to certain insurance policies, the defendants, on many occasions, gave an oral quotation as to the amount which the premium would be for a particular policy or renewal and then later billed the plaintiffs for a premium which was larger than the premium orally quoted. In sum, plaintiffs claim that they were overcharged.

Count III was referred to the undersigned for a Master's Hearing pursuant to 28 U.S.C. § 636(b)(2). On December 5, 1984, a Master's Hearing on Count III of the plaintiffs' Complaint commenced before the undersigned. The plaintiffs' first witness was John H. Sullivan, President of the plaintiff-agencies. During the course of plaintiffs' counsel's direct examination, counsel for the defendants objected when counsel sought to have the witness authenticate a document which was requested during discovery pursuant to Rule 34, F.R. Civ.P. and which allegedly was not produced by the plaintiffs.

The document was obviously relevant to the issue which I, as Master, must decide, i.e. whether or not the plaintiffs were overcharged on premiums for the policies which the plaintiffs have listed.

Although the defendants' objection at the Master's Hearing on December 5th was to a single document, further inquiry has revealed that the alleged non-disclosure pertained to several so-called "quote files" relative to the insurance policies as to which overcharges are claimed. The defendants claim that the plaintiffs failed in their discovery obligations in two ways. First, they claim that the documents were not produced pursuant to a request for production made in December, 1980. Second, they claim that the documents were not identified in response to interrogatories which were filed in January, 1982 seeking a specification of documents upon which the plaintiffs would rely in attempting to prove each of the overcharge claims.

## THE DOCUMENT REQUEST—DECEMBER, 1980

As stated, the first method by which documents were sought was through a request pursuant to Rule 34, F.R.Civ.P. On December 19, 1980, the defendants filed Defendants' First Request For Production Of Documents (# 06). Paragraph 1 of this request sought all documents relative to any communications (oral and written) between the parties which pertain to the allegations of the Complaint. The plaintiffs did not file a response until September 14, 1981 when Plaintiffs' Response To Defendants' First Request For Production (# 20) was filed. The response was to the effect that, with certain exceptions not here relevant, "... [a]ll documents in plaintiffs [sic] possession described in paragraph 1 have been turned over ...".

Nine months after the request for documents had been made, at the deposition of John H. Sullivan on September 22, 1981, the existence of "quote files" was revealed. These quote files had never been produced in response to Defendants' First Request For Production Of Documents. Defendants filed Defendants' Second Request For Production Of Documents (# 22) seeking production of the quote files specifically. This request sought "Plaintiffs' complete quote files, as described in his deposition testimony on September 22, 1981, for the period from May 1, 1976 through November 14, 1981 for each customer of plaintiffs who had any policy with any defendant." In addition, the defendants filed Defendants' Motion To Compel Production Of Documents (# 23) on October 8, 1981 which sought to compel the production of the documents as being within Defendants' First Request For Production Of Documents.

This motion to compel was never acted upon because plaintiffs' counsel agreed to produce the documents. Counsel for the defendants made arrangements whereby the original files would be picked up at plaintiffs' counsel's office by Xerox Corporation, copied by Xerox, and returned to plaintiffs' counsel's office. This was done, and the copies were delivered by Xerox to defendants' counsel's office. The cost to the defendants in having this copying done was $8,143.67.

On December 30, 1981, defendants' counsel prepared a list of the quote files which had been produced. Defendants' counsel claims that the quote files for the Draper, Reynolds, Semple and Servitor policies and the 1979–80 quote file for the Litchfield policies were not produced by the plaintiffs and, thus, not picked up by Xerox and copied.

A request for the files was made by letter on the day before the Master's Hearing; plaintiffs' counsel did not respond.

## THE INTERROGATORIES—JANUARY, 1982

The second manner in which the defendants sought to procure documents relative to the overcharge claims was through interrogatories. On January 11, 1982, after receiving the copies of the quote files which had been made by Xerox, defendants' counsel filed a set of interrogatories numbered 12 through 37 (# 30). Timely answers were not filed, so defendants' counsel filed a motion to compel on April 9, 1982 (# 33). The Court denied the motion on May 19, 1982 because by the time of the

hearing on that date, the plaintiffs ' had answered the interrogatories. In fact, Plaintiffs' Answers To Interrogatories ## 12–37 By Defendants (# 40) were filed on May 4, 1982.

Interrogatories ## 14–16 and plaintiffs' answers thereto read as follows:

*Interrogatory #14*—For each policy identified in your answer to interrogatory No. 12, [the list of policies on which the plaintiffs claim they were overcharged] please state the author and date of each document in your business records that you claim is evidence of the amount or date of the oral quote or the person giving or receiving it.

*Answer*—The attached documents which follow each of the thirteen-page summary are the business records which support plaintiffs' claims.

*Interrogatory #15*—For each such document that was among the business records you have already produced for the defendants' inspection and copying, please describe the individual file in which the document was located and the document itself with sufficient particularity to permit defendants to find the document among those produced.

*Answer*—For the convenience of the defendants the documents are produced herewith.

*Interrogatory #16*—Please describe each such document that has not yet been produced with sufficient particularity to allow you to produce it in response to a request from defendants.

*Answer*—For the convenience of the defendants the documents are produced herewith.

A number of documents were attached to the answers. The answers were never supplemented.

## THE MASTER'S HEARING—DECEMBER 5 & 6, 1984

When, at the first day of the Master's Hearing on December 5, 1984, defendants' counsel objected to the introduction of the document which had not been produced, the Court attempted to ascertain the extent of any failure to produce. At that time, the Court learned, as stated *supra*, that on December 4th, defendants' counsel had written a letter to plaintiffs' counsel, the last two paragraphs of which listed five quote files which had not been produced and which defendants' counsel stated he "... would like to inspect and have copied immediately." The last line of the letter read: "Please let me know when these files will be available." Since plaintiffs' counsel had not responded to the letter, the Court took a recess in order to allow counsel for the plaintiffs the opportunity to determine whether any of the five quote files existed, and if so, to produce them in Court.

On the next day, December 6, 1984, counsel for the plaintiffs produced the quote files for Draper, Litchfield, Reynolds and Servitor. The plaintiffs indicated that there were no quote files for Semple.

In response, the defendants orally moved for an order precluding the plaintiffs from introducing into evidence any of the documents not previously produced and from introducing any documents in support of any overcharge claim that were not identified in the answers to interrogatories. (Transcript of 12/6/84 hearing, [# 217] at pp. 2—15–17).

After hearing arguments on the motion, the Court ordered the plaintiffs' counsel to prepare a list of each document which he intended to introduce in support of the overcharge claim or which would be used to refresh a witness' recollection with respect to an overcharge claim. The matter of sanctions was deferred. (Transcript, [# 217] at pp. 2—45–46).

Plaintiffs' counsel filed a list of documents (# 216) on December 17, 1985. It appears that of the five hundred odd documents on the list, only twenty-nine documents appear both on the list and as attachments to the interrogatory answers.

## DEFENDANTS' PRESENT MOTION FOR SANCTIONS

Defendants' Motion For Sanctions For Failure To Make Discovery (# 225) was

filed on March 22, 1985 and, in essence, reduces to writing the oral motion on December 6, 1984. Defendants seek orders (1) precluding the plaintiffs from introducing any of the "quote files" which were not produced until December 6, 1984 into evidence or using the files to refresh any witness' recollection and (2) precluding the defendants from introducing into evidence or refreshing any witness' recollection with any document not identified in the interrogatory answers.

## IMPOSITION OF SANCTIONS

After hearing and considering the respective memoranda filed by counsel, I am of the opinion that imposition of sanctions upon plaintiffs and their counsel is fully warranted and, in fact, required on the facts of this case.

■ First, based on the evidence before me, I find that plaintiffs and their counsel were clearly negligent in failing to produce the quote files for the Draper, Reynolds, Semple and Servitor policies and the 1979–80 quote file for the Litchfield policies.

So far as appears, counsel for the plaintiffs requested that Mr. Sullivan deliver the quote files to counsel's office, which he did, and then counsel for the plaintiffs gave the files to the representatives of Xerox for copying as per the defendants' direction. Mr. Sullivan did not inventory the quote files he produced to his attorneys, nor did he make any list of what files were produced. Plaintiffs' attorney did nothing to verify that all the quote files had been produced, nor did plaintiffs' counsel make any list of what quote files were delivered to his office. This is inexcusable. The identity of the policies on which overcharges were claimed was known to the plaintiffs and their counsel. Despite this, it appears that neither Mr. Sullivan nor plaintiffs' counsel did anything to verify that the quote files relevant to the claimed overcharges had been produced. In my view, this method of responding to discovery requests represents a careless disregard of a party's obligations. Not only was there no effective review to determine that production was complete but no record was made of what was produced. Since no record was made, plaintiffs' counsel argues that it cannot be proved that these five quote files were not produced. The failure to keep a record of what was produced is just another aspect of the carelessness of plaintiffs and their counsel. Plaintiffs' counsel's argument seeks to bar sanctions based on this further aspect of carelessness.

The evidence that the documents were not produced is strong. Defendants' counsel listed each file which was received from Xerox, and these five were not among them. The argument that Xerox made a mistake and did not copy these five files is, in my view, not credible on this record.

In short, I find that the five files were not produced, and the cause for the their non-production was the negligence and carelessness of plaintiffs and their counsel in responding to discovery requests.

■ Plaintiffs' argument that the defendants have waived any objection to the non-production because of defendants' counsel's failure to inquire about the missing files is without merit. When one party serves a document request on another party, it is very often the case that the requesting party does not know whether any documents exist responsive to the request. This is such a case. Defendants' counsel was entitled to rely on the representation that all quote files were being produced, especially in view of the fact that Mr. Sullivan, at his deposition, was unable to state that there existed a quote file for every insured. In addition, defendants' counsel did write a letter on the day before the hearing seeking production if the files existed; plaintiffs' counsel never bothered to respond. I find that there has been no waiver by the defendants.

Second, I find that the plaintiffs and their counsel were equally careless in answering interrogatories ## 14, 15 & 16. Interrogatory # 14 asked the plaintiffs to identify from their own business records each document which "... you claim is evidence of the amount or date of the oral

quote or the person giving or receiving it ..." as to each policy on plaintiffs' overcharge list. Interrogatory # 15 asked the plaintiffs to identify the file in which any document identified in answer to the preceding interrogatory which had already been produced could be found. Interrogatory # 16 asked the plaintiffs to identify with sufficient particularity any document identified in answer to interrogatory # 14 which had not been produced so that the defendants could file specific requests to produce such documents. The purpose of the interrogatories is plain. The defendants sought to have the plaintiffs specify the documents in their business records which were evidence of the claimed overcharges so that they could discover what documentary evidence existed which, according to the plaintiffs, supported each of the claimed overcharges. This is a perfectly legitimate and proper purpose of discovery, i.e. to narrow and clarify the issues. *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5 Cir., 1978). This purpose is fully sanctioned by the Federal Rules of Civil Procedure. Rule 33(b), F.R.Civ.P., provides that "[i]nterrogatories may relate to any matters which can be inquired into under Rule 26(b), [F.R.Civ.P.] ...". Rule 26(b), F.R.Civ.P., provides, in pertinent part that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, ... *including the existence*, nature, custody, condition and location *of any books, documents*, or other tangible things ...

Emphasis supplied.

For the plaintiffs to have attached only 29 of the over 500–odd documents which the plaintiffs plan to introduce to prove the overcharge claims makes a mockery of the discovery process and, when considering the purpose for which the defendants propounded the interrogatories, renders the answers worthless to the defendants.

Plaintiffs' argument that they should be excused because they produced a great volume of documentation during discovery is totally without merit. It is precisely because there was so much documentation in the case that the defendants sought to have the plaintiffs specify, in answer to interrogatories ## 14, 15 & 16, what particular documents were going to be introduced in support of the overcharge claims.

In sum, I am of the opinion that sanctions must be imposed in connection with the plaintiffs' failure to provide requested discovery in the form of producing the five quote files and answering fully interrogatories ## 14, 15 & 16. As the Second Circuit Court of Appeals has written:

> Where justified, ... the imposition of sanctions for discovery abuse is essential to the sound administration of justice.

*Penthouse International, Ltd. v. Playboy Enterprises*, 663 F.2d 371, 372, 392 (2 Cir., 1981).

## THE APPROPRIATE SANCTION IN THIS CASE

■ As stated *supra*, the defendants seek sanctions in the form of an order precluding the plaintiffs from introducing into evidence or using at trial any document which was not produced pursuant to the document request and any document which was not identified in answers to interrogatories ## 14, 15 & 16. While, in my opinion, the record in this case would fully support such sanctions, I decline to issue any orders precluding the use of this evidence. The reasons are two-fold.

First, an order of preclusion would prolong rather than advance this litigation. Quite simply, if such an order were issued, I can foresee endless litigation at the resumed Master's Hearings over the extent to which Mr. Sullivan has "used" a document which has been precluded to refresh his recollection before testifying. Mr. Sullivan is President of the plaintiff-agencies and the documents are ones kept in the usual course of business of those agencies; Mr. Sullivan has seen the documents, and in many cases, is presumably the author of all or part of some of the documents. The extent to which Mr. Sullivan "used" the documents in preparing for his testimony

or the extent to which his memory is based on his prior reference to the documents would be extremely difficult to sort out and would, in my opinion, unnecessarily prolong this litigation.

Second, I am of the view that there is a two-part sanction which will avoid the problems inherent in an order of preclusion and not only will sanction the plaintiffs and their counsel for their conduct but also minimize the prejudice to the defendants. This sanction involves first the granting of a continuance so that the defendants' counsel can review the documents which are contained on the list (# 216) prepared by plaintiffs' counsel and filed on December 17th and fully prepare his case with those documents disclosed. The second part of the sanction is an order requiring the plaintiffs and their counsel to pay the reasonable expenses, including attorney's fees, which will be incurred by the defendants in having their counsel re-prepare their case during the period of the continuance. This, in my opinion, is essential. Merely granting a continuance would not be in the interests of justice. There is no question but that the defendants will be put to added expense during the period of the continuance due to the failure of the plaintiffs and their counsel to abide by their discovery obligations; it is patently unfair to require that the defendants bear those expenses which were plainly caused by plaintiffs and their counsel.

## THE POWER TO IMPOSE THE TWO–PART SANCTION

There is no question but that the Court has the power to grant the continuance. However, on the facts of this case, there is an issue of whether the Court has the power to impose the second part of the sanction, i.e. the award of reasonable expenses, including attorney's fees, to the defendants.

### A. *Rule 37(b), F.R.Civ.P.*

■ The first point to be made is that sanctions cannot be imposed in this case pursuant to Rule 37(b), F.R.Civ.P. by reason of the plaintiffs having failed to obey an order compelling discovery. The reason is simple. No order pursuant to Rule 37(a)(2), F.R.Civ.P., was ever entered. The reason for this is not that motions to compel were not filed; as noted *supra*, the defendants filed motions to compel production of the quote files and motions to compel answers to interrogatories. Rather, the reason that no orders pursuant to Rule 37(a)(2), F.R.Civ.P., were ever entered is that plaintiffs produced documents and filed answers to the interrogatories before the time at which the Court was to act on the motions and the Court, on the basis that documents had been produced and interrogatories had been answered, issued no orders compelling discovery.

This would seem to eliminate Rule 37(b)(2), F.R.Civ.P., as a basis for imposing the sanction of requiring payment of reasonable expenses, including attorney's fees, since, by its terms, Rule 37(b)(2), F.R. Civ.P., permits imposition of sanctions for failure to obey an order pursuant to subsection (a) of Rule 37. *Israel Aircraft Industries, Ltd. v. Standard Precision*, 559 F.2d 203, 208 (2 Cir., 1977); *Britt v. Corporacion Peruana De Vapores*, 506 F.2d 927, 932 (5 Cir., 1975). The Second Circuit Court of Appeals has written that it is "doubtful whether sanctions for non-production of documents could be imposed without [a party] first obtaining a Rule 37(a) order for their production, except perhaps in the unusual situation where the exercise of the inherent power to impose sanctions is appropriate, see *Roadway Express, Inc. v. Piper, supra* [447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980)] ...". *Penthouse International, Ltd. v. Playboy Enterprises, supra*, 663 F.2d at 389.

### B. *Rule 37(d), F.R.Civ.P.*

■ Nor do I believe that the sanction can be supported by Rule 37(d), F.R.Civ.P. That rule provides, in pertinent part:

If a party ... fails (1) to appear before the officer who is to take his deposition after being served with proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33,

after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others, it may take any action authorized under paragraphs (A), (B), and (C) or subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that other circumstances make an award of expenses unjust.

In the instant case, the plaintiffs *did* "serve answers or objections to interrogatories" and *did* "serve a written response to a request for inspection." I am of the opinion that the power to impose sanctions for failure to produce all the documents requested or to respond fully to the interrogatories cannot be found in Rule 37(d), F.R.Civ.P., if answers or objections have been filed to the interrogatories or if a written response has been filed to a request for production of documents.

There is authority which holds that even if a response to a Rule 34 request is made, "... a culpable failure to produce documents in response to a request to produce can be the basis for sanctions under Rule 37(d)." *Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, 145 (N.D.Ill., 1982). In a footnote, the Court in that case explained its reasoning:

> Rule 37(d) speaks to the case where a party "fails ... to serve a written response to a request ..." Here, defendant did serve a written response. The problem is that the response contained serious misrepresentations and failed to provide the material requested. Despite this, defendant appears to concede that Rule 37(d) is applicable, since a response containing misrepresentations denying the existence of requested materials is as good as no response at all. Indeed, "dilatory and partial compliance" with a re-

quest to produce does not remove a case from the ambit of Rule 37(d). *Charter House Insurance Brokers, Ltd. v. New Hampshire Insurance Co.*, 667 F.2d 600, 607 (7th Cir., 1981) Moreover, apart from rule 37, sanctions can be imposed under the inherent powers of this court. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980).

*Id.* at 145, footnote 5.

With all due respect, I think equating "failing to respond" with filing a response containing "serious misrepresentations" and a "failure to provide the material requested" with "failing to file a response" does some violence to the plain terms of Rule 37(d), F.R.Civ.P. This becomes clearer when the type of response which is required by Rule 34(b), F.R.Civ.P., is considered. That Rule provides:

> The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated.

Commentators have written that, in filing a response pursuant to Rule 34(b), F.R. Civ.P.:

> ... it should be enough for the party to respond by saying that a particular document is not in existence or that it is not in his possession, custody, or control.

Wright & Miller, *Federal Practice And Procedure: Civil*, § 2213, p. 641.

> ... the party making [the response] must indicate as to each item or category described in the request that he will comply, or state the reasons for objection.

4A *Moore's Federal Practice*, ¶ 34.05[3], p. 34–31. In addition, courts have held that if a party is suspicious as to the accuracy of a response to the effect that certain documents "... were not available and therefore could not be produced", the requesting party accepts the response unless the requesting party files a motion to compel discovery. *Clinchfield Railroad Co. v. Lynch*, 700 F.2d 126, 132 (4 Cir., 1983). It

is hard to reconcile that exposition of the law with the notion that a false response or a failure to produce all documents requested is the equivalent of a "failure to respond" as that term is used in Rule 37(d), F.R.Civ.P.

In addition, I am of the opinion that the Court in *Fautek* read too much into the holding of *Charter House Insurance Brokers, Ltd. v. New Hampshire Insurance Co.*, 667 F.2d 600 (7th Cir., 1981). In the *Charter House* case, there was plainly a failure to respond by Charter House and a motion filed by New Hampshire Insurance pursuant to Rule 37(d). *Id.* at 602. However, before the Court acted on the motion, the attorney for Charter House promised to produce the documents. When some were produced but not all, the Court allowed the Rule 37(d) motion. On appeal, the Charter House argued that its "late and incomplete tender should have ended the applicability of Rule 37(d)". *Id.* at 604. It was in this connection that the Court wrote that:

Charter House's position ... overestimates the curative effect of dilatory and partial compliance.

*Id.*

I agree completely that dilatory and partial compliance *after a failure to file a response* does not prevent the applicability of sanctions pursuant to Rule 37(d) for failure to file a response. But I disagree that "dilatory and partial compliance" after a response has been filed permits the imposition of sanctions pursuant to Rule 37(d), F.R.Civ.P. if all documents are not produced or if the response is found to have been untrue. Rule 37(d), F.R.Civ.P., is applicable only when there has been a "complete failure to comply with discovery". *Israel Aircraft Industries, Ltd. v. Standard Precision, supra*, 559 F.2d at 208.

Accordingly, I do not find in Rule 37(d), F.R.Civ.P., the power to impose the sanction of requiring payment of reasonable expenses, including attorney's fees, which I find to be the most just sanction in the circumstances.

### C. *Rule 26(e), F.R.Civ.P.*

Defendants argue that sanctions can be imposed on the basis that the plaintiffs failed to supplement their answers to interrogatories ## 14, 15 and 16 by either identifying the additional documents which had not been identified in the original answers to the interrogatories but which the plaintiffs later determined were evidence of the overcharges.

Rule 26(e), F.R.Civ.P., provides, in pertinent part:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) if he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend is in substance a knowing concealment.

It is clear that subsection (1) of Rule 26(e), F.R.Civ.P., is not applicable to the facts of this case, for the matter called for in interrogatories ## 14, 15 and 16 did not fall within the categories of identity of persons having knowledge or identity of experts.

The question then is whether subsection (2) of Rule 26(e), F.R.Civ.P., applies in the instant case. "... [B]efore any duty [under Rule 26(e)(2)] arises, it must also be shown that the failure to disclose the new facts would amount to a knowing concealment." *Havenfield Corporation v. H & R*

**68**

*Block, Inc.*, 509 F.2d 1263, 1272 (8 Cir., 1975), *cert. den.* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). As is stated in one treatise:

> The critical word here is "knows." This requires both actual knowledge of the new information and actual knowledge that it is inconsistent with a response previously made. Though the rule refers to the "party" as the one who "knows," it is apparent that knowledge of his lawyer must be regarded as knowledge of the party for this purpose,[91] as it is for purposes of discovery generally.

Wright & Miller, *Federal Practice and Procedure: Civil* § 2049, p. 323. (footnotes other than 91 omitted).

Footnote 91 reads:

> The Advisory Committee Note to Rule 26(e) says in part: "Another exception is made for the situation in which a party, or more frequently his lawyer, obtains actual knowledge that a prior response is incorrect. This exception does not impose a duty to check the accuracy of prior responses, but it prevents knowing concealment by a party or attorney." 48 F.R.D. at 508.

*Id.*

■ On the facts of this case, I cannot find a "knowing" in the sense of "intentional" concealment. I do not view the evidence as supporting a finding that Mr. Sullivan or counsel for the plaintiffs answered interrogatories ## 14, 15 and 16 with the purpose of intentionally concealing documents upon which they would rely in proving their overcharge claims. Rather, it is again a case of negligence and carelessness. I am of the view that Mr. Sullivan and counsel for the plaintiffs attached the documents to the answers to interrogatories ## 14, 15 and 16 without much thought as to the purpose of the interrogatories themselves and without much thought as to whether they were attaching all the documents upon which they would rely in proving their overcharge claims. After that, I doubt if they ever looked at the answers again until the first day of the Master's Hearing, and I am confident that when they were preparing for the Master's Hearing, it did not occur to them that their answers were woefully deficient. In short, I cannot find that either Mr. Sullivan or plaintiffs' counsel acted knowingly or intentionally in failing to supplement their answers to the three interrogatories. Thus, I do not see a basis for imposing sanctions upon Mr. Sullivan or plaintiffs' counsel on the basis of Rule 26(e)(2), F.R. Civ.P.

### D. *28 U.S.C. § 1927*

■ Consideration must be given to whether authority to impose the second part of the two-part sanction can be found in 28 U.S.C. § 1927, which reads as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

While I have no difficulty in finding that the plaintiffs and their counsel have multiplied the proceedings in this case "... as to increase costs unreasonably ...", I cannot find that they have acted vexatiously. The statute requires "... a clear showing of bad faith ...", *State of West Virginia v. Charles Pfizer & Co.*, 440 F.2d 1079, 1092 (2 Cir., 1971), *cert. den.* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) or a showing of action "lacking justification and *intended* to harass." *United States v. Ross*, 535 F.2d 346, 349 (6 Cir., 1976) quoting definition of "vexatious" found in Webster's Third International Dictionary (1971) (emphasis supplied by Court). After quoting the definition, the Court in *Ross* went on to write:

> Personal responsibility should, in this instance, flow only from an *intentional* departure from proper conduct, or at a minimum, from a reckless disregard of the duty owed by counsel to the court.

*Ross, ante,* 535 F.2d at 349 (emphasis supplied).

For the reasons stated *supra,* I do not think the actions of plaintiffs, through Mr. Sullivan, and plaintiffs' counsel were either in bad faith or intended to harass or intentionally committed. Rather, I find that both were irresponsibly careless and negligent, even grossly so.

### E. *Inherent Power Of The Court*

There is no question but that the Court possesses inherent powers with respect to the conduct of litigation before it which are not delineated in rules and statutes. The inherent powers are those which "... are necessary to the exercise of all others." *Roadway Express, Inc. v. Piper, supra,* 447 U.S. at 764, 100 S.Ct. at 2463 quoting *United States v. Hudson,* 7 Cranch. 32, 34, 3 L.Ed. 259 (1812). In certain circumstances, this may include the power to assess attorney's fees against counsel. *Roadway Express, supra* 447 U.S. at 765, 100 S.Ct. at 2463. The Supreme Court noted that in *Link v. Wabash R. Co.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962), it upheld the *dismissal* of an action for failure to prosecute as an 'inherent power' which is "... 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs ...'." *Roadway, supra,* 447 U.S. at 765, 100 S.Ct. at 2463, quoting from *Link, supra,* 370 U.S. at 630, 82 S.Ct. at 1389. The Court then wrote:

> Since assessment of counsel fees is a less severe sanction than outright dismissal, *Link* strongly supports Roadway's contention here.

*Roadway, supra,* 447 U.S. at 765, 100 S.Ct. at 2464.

However, in *Roadway,* the Court went on to note that there were limits on this inherent power to depart from the general rule that a litigant cannot recover his counsel fees. Certainly, the Court has the power to depart from the general rule when the conduct of the litigation is in bad faith. *Roadway, supra* at 766, 100 S.Ct. at 2464. Whether the power extends to sanctions for "mere negligence" was not addressed by the Court. *Roadway, supra* at 767, 100 S.Ct. at 2464, footnote 13.

On the facts of the instant case, I believe that I have the inherent power to impose the second part of the two-part sanction discussed *supra,* i.e. an order requiring the plaintiffs and their counsel to pay the reasonable expenses, including attorney's fees, which will be incurred by the defendants in having their counsel re-prepare their case during the period of the continuance. I base this opinion on several factors.

First, there appears to be no question but that I have the discretion under the Court's inherent powers to exclude the evidence. *Campbell Industries v. M/V Gemini,* 619 F.2d at 27; *Davis v. Marathon Oil Co.,* 528 F.2d at 395; *Coalition Of Black Leadership v. Doorley,* 349 F.Supp. 127, 129 (D.R.I., 1972). However, the discretion may not be abused. *Halverson v. Campbell Soup Co.,* 374 F.2d 810, 812 (7 Cir., 1967).

Second, I am of the opinion that the Court has inherent power to impose a sanction which is lesser than the sanction of exclusion. In the instant case, I view the two-part sanction which is proposed to be a lesser sanction than the sanction of exclusion. That the inherent power to exclude includes within it the lesser sanction is supported by the Supreme Court's statement in *Roadway Express, Inc. v. Piper, supra,* 447 U.S. at 765, 100 S.Ct. at 2464, that "assessment of counsel fees is a less severe sanction than outright dismissal" and that if the Court had the power to dismiss, it had the power to impose the lesser sanction. The use of the power to impose a lesser sanction is also recommended by the Second Circuit in *Schwarz v. United States,* 384 F.2d 833 (2 Cir., 1967) in which the Court wrote:

> Under the circumstances, we cannot say that the remedy of dismissal of this five year old action was an abuse of discretion. We would, however, suggest that the court keep in mind the possibility, in future cases of inexcusable neglect by counsel, of imposing substantial costs and attorney's fees payable by offending

counsel personally to the opposing party as an alternative to the drastic remedy of dismissal.

*Id.* at 836.

The *Schwarz* decision is cited by the Supreme Court in the *Roadway Express* case, 447 U.S. at 767, 100 S.Ct. at 2464, footnote 13, as a case in which the suggestion that costs and attorney's fees be assessed in cases of "inexcusable neglect" by counsel when the neglect does not rise to intentional or vexatious conduct or an inference of bad faith.

■ The Court has inherent powers to impose sanctions, even though "no techncial violation of any particular rule" was made. *Guidry v. Continental Oil Co.,* 640 F.2d 523, 534 (5 Cir., 1981). This power may be exercised to sanction non-production of documents even when no order compelling production pursuant to Rule 37(a)(2), F.R.Civ.P., was obtained. *Penthouse International, Ltd. v. Playboy Enterprises, supra,* 663 F.2d at 389–90. I also find support for the inherent power to impose lesser sanctions in the cases of *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885, 887–88 (5 Cir., 1968) cited with approval in *Ramos Colon v. U.S. Attorney For The District Of Puerto Rico,* 576 F.2d 1, 3 (1 Cir., 1978); *Richman v. General Motors Corporation,* 437 F.2d 196, 199–200 (1 Cir., 1971), and *Schneider v. American Export Lines, Inc.,* 293 F.Supp. 117, 119 (S.D.N.Y., 1968).

Thus, I shall impose the two-part sanction pursuant to the inherent power of the Court. Perhaps the bottom line is that the inexcusable neglect and carelessness of plaintiffs' counsel and Mr. Sullivan have forced the Court to suspend the Master's Hearing for a period of over seven months. The power to impose a sanction is inherent in the Court's power to set a schedule for the litigation of cases and hold to that schedule.

## ORDER

For the foregoing reasons, it is ORDERED that the Master's Hearing be, and the same hereby is, CONTINUED to *Monday, July 15, 1985 at 9:00 A.M.*

Further, it is ORDERED that counsel for the plaintiffs personally and the plaintiff-agencies reimburse the defendants for the costs, including reasonable attorney's fees, which will be incurred by defendants' counsel in re-preparing his case for the Master's Hearing. The total sum will be determined after counsel for the defendants has reviewed the documents which were produced on December 6, 1984 and the documents contained in Plaintiff's List Of Documents (# 216) filed December 17, 1984 and after the Court holds a hearing on the total sum to be reimbursed. However, the sum of attorney's fees to be reimbursed shall not exceed reimbursement for more than fifty (50) hours at defendants' counsel's customary rate. In this connection, counsel for the defendants shall FORTHWITH file and serve an affidavit setting forth the hourly rate he is billing his clients at the present time.

It is FURTHER ORDERED that plaintiffs' counsel shall pay one-half the total; the plaintiff-agencies shall pay the other half of the total.